IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| Laura Bell Graves, | No. 1:06-cv-00788-LG-RHW |
| Plaintiff, | |
| | **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES** |
| v. | |
| | (Civil Rights-Employment) |
| Northrop Grumman Ship Systems, Inc., | Jury Trial Demanded |
| Defendant. | |

**PRELIMINARY STATEMENT**

1.   This action seeks injunctive and declaratory relief to prevent continuing, systemic, and unjustified race discrimination by the employer, NORTHROP GRUMMAN SHIP SYSTEMS, INC. ("NGSS"), with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of Black employees at NGSS, including severe, pervasive, and ongoing harassment of Black employees through longstanding maintenance of a racially hostile work environment.  In addition to injunctive and declaratory relief, and all other available equitable relief, plaintiff seeks compensatory and punitive damages.

**JURISDICTION**

2.   This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); and Civil Rights Act of 1866, 42 U.S.C. § 1981 ("1981").  Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ l343 (3)&(4); 28 U.S.C. § 1331 and 28 U.S.C. § 1337.  Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.

## PARTIES

3.   Laura Bell Graves is a Black employee of NGSS who has been employed by NGSS for over 28 years.

4.   NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a business that is engaged in the construction and refurbishing of seagoing vessels, both military and civilian.  It is located in Pascagoula, Mississippi.  It is an employer for purposes of Title VII.  On the basis of information and belief, plaintiff alleges that NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a successor in interest to INGALLS SHIPBUILDING COMPANY.

5.   NGSS has received numerous contracts and substantial income from agencies and departments of the Federal Government, and because of the receipt of said contracts and income it is subject to Title VI of the Civil Rights Act of 1964, as amended.  NORTHROP GRUMMAN SHIP SYSTEMS, INC., and its predecessor, INGALLS SHIPBUILDING COMPANY, therefore are, and have been, a federal contractor at all times relevant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.   All conditions precedent to jurisdiction pursuant to section 706 of Title VII of the Civil Rights Act of 1964, as amended, have been complied with to wit:  an appropriate charge of employment discrimination has been filed with the Equal Employment Opportunity Commission, and a notice of right to sue was issued by the Equal Employment Opportunity Commission.

7.   Plaintiff has filed a timely complaint based on the time limits contained in section 706 of Title VII of the Civil Rights Act of 1964, as amended.

8.   On or about December 20, 2000, the Equal Employment Opportunity Commission issued a determination finding reasonable cause to believe that a racially hostile work environment existed at NGSS.

9.   Attempts at conciliation regarding the finding of a racially hostile work environment, which was and is statutorily required, failed.

**PROCEDURAL BACKGROUND PRECEDING THIS COMPLAINT**

10. An initial complaint was filed in the United States District Court for the Southern District of Mississippi on March 21, 2001, in which eleven (11) persons, named as representative plaintiffs, and the organization, Ingalls Workers for Justice, alleged class-wide discrimination at NGSS on the basis of race. The case was assigned a case number of 1:01-cv-111-(G)-(R).

11. A First Amended Complaint was filed on April 26, 2001 in the initial case, additionally alleging maintenance of a racially hostile work environment at NGSS.

12. A Complaint in Intervention was filed on February 13, 2003 in the initial case, necessitated by the Court's dismissal of the following causes of action and parties from the First Amended Complaint on February 28, 2002:

    a) Dismissal of the class action allegations seeking compensatory and punitive damages;

    b) Dismissal of the claim for relief alleged pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*;

    c) Dismissal of the claim for relief alleged pursuant to the Thirteenth Amendment to the U.S. Constitution;

    d) Dismissal of organizational plaintiff INGALLS WORKERS FOR JUSTICE;

    e) Dismissal of defendant LITTON INDUSTRIES; and

    f) Dismissal of defendant NORTHROP GRUMMAN.

13. A Second Amended Complaint was filed on April 7, 2003 in the initial case.

14. On or about March 16, 2004, the initial case was reassigned to the Honorable Louis Guirola, Jr., District Court Judge; on December 30, 2004, the Honorable Robert H. Walker, Magistrate Judge, was assigned to be the Magistrate Judge for the initial case.

15. On August 17, 2006, Magistrate Judge Walker entered an order entitled, "Order Requiring Separate Complaints," which, *inter alia*, severed the plaintiffs' claims from one another, and required the filing of new complaints and assignment of new case numbers for each of the individual plaintiffs in Case No. 1:01-cv-111-(LG)-(RHW).

Plaintiff Laura Bell Graves' Complaint for                          3
Declaratory and Injunctive Relief and Damages
No. 1:06-cv-00788-LG-RHW

16. At some point during the period of time from August 17, 2006 through September 7, 2006, plaintiff Laura Bell Graves' severed action was assigned the case number of 1:06-cv-00788-(LG)-(RHW).

## FACTUAL STATEMENT

## RACIAL DISCRIMINATION GENERAL ALLEGATIONS

17. The defendant, NGSS, has intentionally pursued and continues to pursue employment policies and practices that constitute systemic discrimination against plaintiff and other Black employees and that deprive or tend to deprive such persons of equal employment opportunities within NGSS.  NGSS has intentionally implemented these policies and practices, among other ways, as follows:

    a) By failing to treat Blacks on an equal basis with Whites.

    b) By using selection devices for promotions that have an adverse impact on Blacks, are not job related and have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures, and have more adverse impact than equally valid alternatives.

    c) By using evaluation procedures in the consideration of employees for promotions that discriminate against or illegally exclude Black employees from consideration.

    d) By failing to provide Black employees with equal opportunities for advancement within the company because of their race.  Black employees are denied promotions despite their qualifications and years on the job.  It is not uncommon for a Black employee to be denied a promotion at NGSS in an area she or he has worked in for twenty years and then be assigned to train a White employee with less seniority.

    e) By maintaining a double standard in the granting of promotions to White employees vis à vis Black employees.  Practices including cronyism, nepotism, word-of-mouth recruitment, failure to post or advertise employment opportunities, and/or the placement of White employees in acting positions have

Plaintiff Laura Bell Graves' Complaint for                                        4
Declaratory and Injunctive Relief and Damages
No. 1:06-cv-00788-LG-RHW

inured to the determent of Black employees historically.

f)  By restricting access to employment opportunities for Black employees and maintaining a workforce in which its supervisory and management personnel has been and continues to be predominately White.

g)  By engaging in a policy in which positions are actually filled even before they may be posted or advertised as an available position.

h)  By demoting Black employees at a disproportionate rate as compared to White employees.

i)  By retaliating against Black employees after they have complained or challenged, in any way, the discriminatory policies, procedures, and practices that permeate the work environment at NGSS.

j)  By denying Black employees opportunities to go on trips or sea trials where they would be able to earn substantial amounts of overtime.

k)  By maintaining a practice of "job steering," resulting in Black employees being assigned to, and then denied the opportunity to move out of, dangerous, dirty, and generally less desirable work areas because of their race.

l)  By instituting and allowing the continuance of a racially hostile work environment for Black employees.

18. This pattern or practice denies the full exercise of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

19. NGSS has been aware that its actions with regard to the treatment of Black employees were and are in violation of federal statutes prohibiting discrimination on the basis of race.

## SPECIFIC CLAIMS FOR RELIEF

### TITLE VII AND § 1981

20. Plaintiff incorporates paragraphs 1 through 19, as though fully set forth herein.

21. Plaintiff has worked for 28 years in one or more of the departments at NGSS utilizing a position entitled "leaderman" or "half-hat."  Based upon information and belief, plaintiff hereby alleges that no formal means of applying for the position of "leaderman" or "half-hat" at NGSS exist; however, plaintiff is aware that numerous White employees have been selected for the position of "leaderman" or "half-hat" without having made any such interest known.  However, plaintiff has never been selected for the position in spite of her 28 years at NGSS.  Plaintiff has not been informed in any way that she was not qualified for the position of "leaderman" or "half-hat."  The means used to determine that plaintiff would not be selected for a position, for which she was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

22. Plaintiff has never been promoted in spite of plaintiff's 28 years at NGSS.  Plaintiff has observed both that Black employees are not promoted in spite of their qualifications and seniority as well as the lack of qualifications of White employees who have been promoted, and, therefore, Plaintiff has not applied for promotive positions for which she was qualified, and plaintiff has never been selected for promotion to any such position.  The means used to determine that plaintiff would not be selected for a position, for which she was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.  Instances were the plaintiff should have been promoted to work leaderman include, but are not limited to, the following instances:

    a) The following White employees were promoted with less seniority than plaintiff: Kelly Elyer was promoted to work leaderman in 1987-88 instead of plaintiff, who was then laid off.  A number of Black employees with more experience and seniority than Elyer were laid off at this time and were told that the reason was because they were not work leadermen.

    b) Another White employee, Bob Garrett, was made work leaderman after only a few months as welder, and later was made supervisor.  His promotion to leaderman happened while plaintiff was laid off.

c)  Another White employee, Mr. Cochran was hired as a welder after plaintiff, but was selected as work leaderman, then supervisor, and now is acting foreman when regular foreman is absent.  He was promoted to avoid lay off in 1987.

d)  Another White employee, Wayne Ellis, was promoted to work leaderman despite having less seniority than plaintiff.

e)  Another White employee, Ricky Fortner, was promoted to work leaderman despite having less seniority than plaintiff.

f)  Another White employee, Wayne Anderson, was promoted to work leaderman before the 1987 lay off to avoid layoff.  He had less seniority than plaintiff.

23. Plaintiff has been laid off at times during which similarly situated White co-workers with fewer years of seniority were not laid off.  Plaintiff was not given an accurate reason as to why she was laid off while White co-workers with fewer years of seniority were not.  The circumstances under which plaintiff has been laid off include, but are not limited to, the following instance:

a)  Plaintiff was laid off in 1987-88.  At that time a White co-worker Kelly Elyer, who was hired five days before Graves in 1985, was promoted to work leaderman so that he could avoid layoff.  Graves knows that other Black employees in Department. 49 with more seniority than Elyer were laid off and were told it was because they were not work leadermen.

24. Plaintiff has been subjected to racial job tracking that assigns Black employees at NGSS at a disproportionate rate as compared to White employees to the most undesirable, dirtiest, and dangerous employment environments in the workplace.  Plaintiff has been assigned to such employment environments in the following instances:

a)  Plaintiff has been assigned to the Hull Department, which is known to be one of the dirtiest departments as well as a department where injury or contracting disease is possible.  She believes that supervisors assign Black workers to jobs like working inside the dome that White workers don't want to do.  Even though

plaintiff had several knee injuries, her supervisor, Ted Brown, continued

assigning her jobs that were hard on her knees.  After she had total knee

replacements in the 2000s, she asked foreman Leonard Pugh for table work three

times; each time he indicated that he could accommodate her, but she would have

to wait.  During that time, a White worker with less seniority was given table

work.

25. Plaintiff has been subject to the practice of forcing Black employees

disproportionately as compared to White employees to work with injuries, without reasonable

accommodation of disabilities, or without provisions being made for medically imposed work

restrictions.   This has occurred in, but is not limited to, the following instance:

    a)   Even though plaintiff had several knee injuries, her supervisor, Ted Brown,

       continued assigning her jobs that were hard on her knees.  After she had total

       knee replacements in the 2000s, she asked foreman Leonard Pugh for table work

       three times; each time he indicated that he could accommodate her, but she would

       have to wait.  During that time, a White worker with less seniority was given

       table work.

26. Plaintiff has been subjected to disparate treatment with regard to the imposition of

discipline for actual or alleged transgressions for which plaintiff is informed and believes

similarly situated White employees would not be disciplined.  This has occurred in, but is not

limited to, the following instances:

    a)  On September 10, 1998, plaintiff was given a written warning by T.E. Brown for

       failure to scan her badge through the system, when NGSS was fully aware that the

       system would not always read the badges when employees scanned them.

    b)  On March 6, 2001, plaintiff was given a written warning for failure to scan her

       badge through the system by R.J Garrett, when NGSS was fully aware that the

       system would not always read the badges when employees scanned them.

27. In 2000, supervisor Bob Graves denied plaintiff the opportunity to work overtime

Plaintiff Laura Bell Graves' Complaint for                                    8
Declaratory and Injunctive Relief and Damages
No. 1:06-cv-00788-LG-RHW

because she had been absent because of a doctor's appointment.  However, a White co-employee was allowed to work overtime by Mr. Garrett even though the White employee had missed two days because of illness. Plaintiff was denied another opportunity to work overtime in April 1999.

28. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to offensive racially derogatory writings, depictions, and/or graffiti on a constant basis in a number of places at NGSS.  NGSS knows or should have known of the presence of offensive racially derogatory writings, depiction, and/or graffiti in its workplace, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has complained about being subjected to the offensive racially derogatory writings, depictions, and/or graffiti, but the response has always been insufficient to remedy the situation.  Plaintiff has not complained about each and every instance of having been exposed to the offensive racially derogatory writings, depictions, or graffiti because plaintiff believed it would be useless so to do, given the historical lack of sufficient response on the part of NGSS.    Such exposure has occurred, but is not limited to, in the following instances:

a) Plaintiff has seen racially offensive graffiti in the restrooms on the East Bank from 1971 up to around 2000.  The graffiti that she saw included the use of the word nigger.  Some of the graffiti included depictions of ropes tied into nooses.

b) Plaintiff has observed that there have been supervisors who have used the same restrooms as she, and therefore, they must have seen the offensive graffiti.

29. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to the term "nigger" or other racial epithets, in the graffiti she has observed in the restrooms at NGSS.  NGSS knows or should have known about ubiquitous placement of the term "nigger" and other racial epithets in the racist graffiti in the restrooms in NGSS, but it has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has not complained about these instances of having been exposed to the term nigger or other racial epithets because plaintiff believed it would be useless so to do given the historical lack of sufficient response on the part of NGSS.    Such exposure has occurred in, but is not limited to

the following instances:

    a)  Plaintiff has seen the word "nigger" in graffiti in East Bank restrooms.  Plaintiff has also heard Bob Garrett make racially offensive remarks when telling certain jokes.

30. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to nooses in a number of places at NGSS.  NGSS knows or should have known about the presence of nooses, both actual and depicted in drawings, at its workplace, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has not complained about each and every instance of having seen nooses at NGSS because plaintiff believed it would be useless to do so, given the historical lack of sufficient response on the part of NGSS.   Such exposure has occurred in, but is not limited to, the following instances:

    a)  In 1997 or 1998, plaintiff observed a noose on the East Bank when she was shown it by James Anderson.  Plaintiff did not complain about the noose because the historical responses have been insufficient to remedy the situation.

    b)  In 2000, plaintiff saw a noose in a sink in one of the restrooms at NGSS.

31. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. The hostile work environment comprises and/or has culminated in the adverse treatment described in paragraphs 20 through 27, incorporated as though fully set forth herein.

32. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact of presence of offensive racially derogatory writings, depictions, and/or graffiti; ubiquitous use of the word "nigger" and other racist epithets; and nooses at NGSS.

33. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact that Black employees have not been provided equal opportunity with regard to upward job mobility.

34. The hostile work environment based on race to which plaintiff has been exposed is of a continuing and ongoing nature and constitutes a continuing violation of Title VII and § 1981.

Plaintiff Laura Bell Graves' Complaint for                                   10
Declaratory and Injunctive Relief and Damages
No. 1:06-cv-00788-LG-RHW

35. NGSS has failed to take steps to remedy and correct promptly the harassing behavior occurring in its workplace.  NGSS has failed to promulgate, disseminate, and enforce adequately an anti-harassment policy and failed to provide sufficient training to its employees regarding the same.  NGSS has failed to respond sufficiently to complaints regarding the harassment as set forth in paragraphs 28 through 34, incorporated as though fully set forth herein.

## APPROPRIATENESS OF EQUITABLE RELIEF

36. Plaintiff will suffer irreparable injury if the declaratory and injunctive relief requested herein is not granted, because NGSS will make employment decisions on the basis of the discriminatory procedures and practices described herein or will not remediate the racially hostile work environment that exists in its workplace. If NGSS is not enjoined from engaging in discriminatory employment practices, plaintiff will be deprived of career opportunities, which plaintiff otherwise would have been able to pursue, but for NGSS's discriminatory employment practices.

37. No plain, adequate, or complete remedy at law is available to plaintiff.  Monetary relief cannot adequately compensate the loss of promotional opportunities, experience, and careers with NGSS.  Similarly, monetary relief cannot adequately compensate the continued subjection to a racially hostile work environment.

38. Unless restrained by order of this Court, NGSS will continue to pursue policies and practices, which are the same as, or similar to those alleged above.

## FIRST CLAIM FOR RELIEF

39. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 37 and further alleges for a first claim for relief as follows:

40. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS.  NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e

Plaintiff Laura Bell Graves' Complaint for                                                                    11
Declaratory and Injunctive Relief and Damages
No. 1:06-cv-00788-LG-RHW

*et seq.*

## SECOND CLAIM FOR RELIEF

41. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 37 and further alleges for a second claim for relief as follows:

42. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS.  NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

## THE APPROPRIATENESS OF COMPENSATORY AND PUNITIVE DAMAGES

43. Defendant NGSS has caused plaintiff emotional distress and mental anguish as a proximate result of its illegal practices, and plaintiff is entitled to compensatory damages pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

44. Similarly, defendant NGSS was aware that its actions with regard to plaintiff were in violation of federal statutes prohibiting discrimination on the basis of race, and therefore, plaintiff is entitled to punitive damages.

## PRAYER

WHEREFORE, plaintiff prays that this Court:

a) Declare pursuant to 28 U.S.C. §§ 2201 & 2202 the employment practices set forth in paragraphs 1 through 38 to be unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* and the Civil Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

b) Adjudge, decree, and declare that the practices of NGSS complained of herein are violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

c) Direct NGSS to take such affirmative steps as are necessary to ensure that the

effects of its unlawful employment practices are eliminated;

d)  Grant equitable relief, including, but not limited to, back pay, sick pay, vacation pay, disability benefits, and seniority rights to plaintiff;

e)  Grant such punitive, general, and special damages as proved at trial;

f)  Award plaintiff the costs and litigation expenses of this action and reasonable attorneys' fees as provided for in section 706(k) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(k), and the Civil Rights Attorneys Fees Award Act of 1976, as amended, 42 U.S.C. § 1988; and

g)  Grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury.

Dated:  September 20, 2006

SANDRA JARIBU HILL, Esq.
Mississippi Workers Center for
Human Rights

WILLIAM C. MCNEILL, III, Esq.
The Legal Aid Society-Employment
Law Center

Counsel for Plaintiffs

By:     /s/ William C. McNeill, III
WILLIAM C. McNEILL, III, Esq.

William C. McNeill, III, Esq., MS Bar No. 42867, *Pro Hac Vice*
Denise M. Hulett, Esq., MS Bar No. 44672, *Pro Hac Vice*
Shelley A. Gregory, Esq., MS Bar No. 43443, *Pro Hac Vice*
The Legal Aid Society – Employment Law Center
600 Harrison Street, Suite 120
San Francisco, California  94107
(415) 864-8848

Sandra Jaribu Hill, Esq., MS Bar No. 10684
Mississippi Workers Center for Human Rights
213 Main Street
P.O. Box 1223
Greenville, Mississippi  38702-1223
(662) 334-1122

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2006, I electronically filed the foregoing with the

Clerk of the Court using the ECF System which sent notification of such filing to the following:

Paul B. Eason; Maria Candace Burnette; Timothy W. Lindsay; Stephen A. Brandon.

I hereby certify that I have mailed by United States Postal Service the documents to the

following non-ECF participants:


Tammi Liddell
3836 Prentiss St.
Moss Point, MS  39563

Willie B. Richmond
1608 Timberlane Road
Gautier, MS  39553

Edna M. Tubbs
P.O. Box 501
Escatawpa, MS  39552



  /s/ Laurel Kapros
Laurel Kapros